# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MONTANA
# GREAT FALLS DIVISION

| | |
|---|---|
| LANNY and KRIS TREASURE,<br><br>     Plaintiff,<br><br>vs.<br><br>UNITED STATES OF AMERICA BUREAU OF INDIAN AFFAIRS; THE ASSINIBOINE AND SIOUX TRIBES OF THE FORT PECK INDIAN RESERVATION; DALE GRANDCHAMP; DOUG GRANDCHAMP; AND JOHN DOES 1-5,<br><br>     Defendants. | CV-20-75-GF-BMM<br><br>**O**RDER |

## INTRODUCTION

Defendants Doug Grandchamp ("Grandchamp") and the Assiniboine and Sioux Tribes of the Fort Peck Indian Reservation (the "Tribes") have filed a Motion to Dismiss for Lack of Jurisdiction. (Doc. 10). Plaintiffs Lanny and Kris Treasure ("Treasures") oppose the Motion. (Doc. 18). This Order refers collectively to Doug Grandchamp and the Tribes as "Defendants" where appropriate.

Defendants seek dismissal on the basis that tribal sovereignty deprives the Court of subject-matter jurisdiction or, in the alternative, that Plaintiffs have failed to allege a claim upon which relief can be granted. (Doc. 11).

## FACTUAL AND LEGAL BACKGROUND

The Assiniboine and Sioux Tribes (the "Tribes") have established the Turtle Mound Buffalo Ranch (the "Ranch") to cultivate a buffalo herd for the benefit of tribal members. (Doc. 11 at 4). The Ranch is located entirely within the Fort Peck Indian Reservation and is run by the Tribes' Fish and Game Department. *Id.*

Plaintiffs Lanny and Kris Treasure own and lease property (the "Treasure Property") in Poplar, Montana, north of the Ranch. (Doc. 1 at 5). Treasures use their land to grow crops and to maintain a residence. *Id.* The Treasure Property is located entirely within the exterior boundaries of the Fort Peck Indian Reservation.

The Tribes supplement the buffalo herd's food supply with hay grown on tribal trust properties. (Doc. 11 at 5). The Tribes' Fish and Game Department did not possess a swather with which to swath the hay on its trust properties and so it engaged in a crop sharing arrangement with Dale Grandchamp and Defendant Doug Grandchamp who were allowed to retain sixty percent of the hay that they swathed. *Id.* at 6.

On August 31, 2018, Doug Grandchamp swathed two of three designated parcels and a third crop-sharer, Chris Forsness ("Forsness"), use Dale

Grandchamp's swather to swath the third. *Id.* at 6–7. A fire broke out while Forsness was swathing the parcel. *Id.* at 7. Roosevelt County had instituted a burn ban on August 28, 2018, and the risk of wildland fire was significant. (Doc. 1 at 5).

Forsness contacted Doug Grandchamp and Fish and Game Director Robbie Magnan, both of whom responded to the fire to assist in putting it out. (Doc. 11 at 7). The BIA Fire Service also responded and directed fire response. *Id.*

Treasures became concerned that the fire would spread to their land and offered aid in fighting the fire. The BIA Incident Commander refused the offer and later told Treasures that the fire had been extinguished. (Doc. 1 at 6-7). The parties dispute whether, by the evening of August 31, 2018, the fire actually had been extinguished or merely controlled. *See id.*; (Doc. 11 at 7). Regardless, by September 1, 2018, the fire spread and engulfed 3,100 acres of the Treasure Property with an additional 700 acres lost due to collateral damage from the fire. (Doc. 1 at 8).

Treasures filed suit on August 26, 2020, against the Bureau of Indian Affairs ("BIA"), the Tribes, Doug and Dale Grandchamp, and five John Does who were also believed to be responsible in some part for the damage to the Treasure Property. (Doc. 1). Dale Grandchamp failed to appear, plead, or otherwise defend himself within the time allowed by law and so default was entered against him on July 9, 2021. (Doc. 21).

## LEGAL STANDARDS

Defendants first have moved to dismiss for lack of subject-matter jurisdiction. Fed. R. Civ. P. 12(b)(1). A party invoking the federal court's jurisdiction bears the burden of proving the actual existence of subject matter jurisdiction. *Thompson v. McCombe*, 99 F.3d 352, 353 (9th Cir. 1996). Any non-frivolous assertion of a federal claim suffices to establish federal question jurisdiction, even if the court later dismisses on the merits. *Churchill Vill., L.L.C. v. GE*, 361 F.3d 566, 570 (9th Cir. 2004).

Defendants also have moved to dismiss for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that appears plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.*

## DISCUSSION

Defendants argue that the Court lacks subject matter jurisdiction over Treasures' claim against them based on the principle of tribal sovereign immunity. Defendants argue that tribal sovereignty shields both the Tribes and Grandchamp, in his capacity as a tribal employee. (Doc. 11). Treasures agree that tribal

sovereign immunity would shield the Tribes in the absence of waiver. Treasures contend, however, that the Tribes have waived their immunity and ask for further discovery to allow them to uncover evidence of waiver. (Doc. 18). Treasures assert that tribal sovereign immunity does not apply to Grandchamp as he is being sued in his individual capacity. *Id.* This Order will discuss separately the application of tribal sovereign immunity to the Tribes and to Grandchamp. The parties do not contest the Court's exercise of jurisdiction over Treasures' claims against the BIA.

**I.  Whether tribal sovereign immunity deprives the Court of jurisdiction over the Tribes.**

The Tribes assert that tribal sovereign immunity shields them from suit in federal court absent waiver or abrogation, neither of which exist in this case. Treasures counter that the Tribes may have waived tribal sovereign immunity by virtue of their relationship with the BIA while fighting the fire on the Ranch.

Tribal sovereign immunity limits a federal court's subject matter jurisdiction over suits against an Indian tribe. *Alvarado v. Table Mountain Rancheria*, 509 F.3d 1008, 1015–16 (9th Cir. 2007). Tribal sovereign immunity protects Indian tribes from suit absent express authorization by Congress or clear waiver by the tribe. *Cook v. AVI Casino Enterprises, Inc.*, 548 F.3d 718, 725 (9th Cir. 2008). Waiver cannot be implied, but rather must be unequivocally expressed. *Fletcher v. United States*, 116 F.3d 1315, 1324 (10th Cir. 1997).

The Tribes assert that they are entitled to tribal sovereign immunity in this case. They argue first that they have not waived immunity. The Tribes next contend that the Federal Torts Claims Act (FTCA) has not abrogated their immunity. Treasures pursue their claims against the Tribes pursuant to the FTCA. (Doc. 11 at 12–13). The Tribes also deny that their contacts with the BIA would affect their sovereign immunity in any way. (Doc. 19 at 6–7).

Treasures suggest that the Tribes may have waived immunity voluntarily in an agreement with the BIA to manage any fire caused on their property. (Doc. 18 at 13). Treasures ask for time to conduct more discovery under Rule 56, to allow them to uncover any evidence of a formal agreement between BIA and the Tribes that explicitly may waive the Tribes' sovereign immunity. *Id.*

Jurisdictional discovery should be ordered circumspectly and only to verify allegations of specific facts crucial to an immunity determination. *Packsys, S.A. de C.V. v. Exportadora de Sal, S.A. de C.V.*, 899 F.3d 1081, 1094 (9th Cir. 2018). The burden for the party seeking jurisdictional discovery remains particularly high where the party seeks to disprove the applicability of an immunity-derived bar to suit. Immunity serves to shield a defendant from the burdens of defending the suit, including the burdens of discovery. *Davila v. United States*, 713 F.3d 248, 264 (5th Cir. 2013). Courts have not granted discovery where the party bases the claim for discovery "on little more than a hunch that it might yield jurisdictionally relevant

facts." *Boschetto v. Hansing*, 539 F.3d 1011, 1020 (9th Cir. 2008); *see also Douglas Indian Ass'n v. Central Council of Tlingit & Haida Indian Tribes of Alaska*, 403 P.3d 1172, 1179 (Alaska 2017). The Alaska Supreme Court upheld the trial court's denial of jurisdictional discovery where the plaintiff "provided theories for how these documents could contain evidence of waiver [of tribal sovereign immunity]," but "did not allege any facts to show why they would." *Douglas Indian Ass'n*, 403 P.3d at 1179.

The Court agrees that no evidence exists that the Tribes have waived tribal sovereign immunity and Treasures have failed to explain how additional discovery would uncover evidence to the contrary. Treasures have asserted that it remains "plausible that any agreement or contract the Tribes have with BIA for firefighting services may include a waiver of sovereign immunity." (Doc. 18 at 13). Treasures fail to support this assertion with any facts. Treasures argue that discovery proves necessary "to oppose the Tribes' bald assertion that it has not waived sovereign immunity." *Id.* This argument misstates the standard. The Court strongly presumes that tribal sovereign immunity has not been waived. *Deschutes River All. v. Portland Gen. Elec. Co.*, 1 F.4th 1153, 1159 (9th Cir. 2021). The burden falls on Treasures to justify their assertion that waiver exists, not the other way around.

Treasures also assert that the Tribes may have waived tribal sovereign immunity by virtue of operating as an instrumentality of the BIA. The FTCA

7

applies to non-government defendants only when they are acting as either an instrumentality or agency of the United States. *See* 28 U.S.C. § 2671. BIA directed fire control efforts, per an agreement with the Tribes to manage fires caused on the property. Treasures assert that the presence of tribal employees while the fire was fought demonstrates that the Tribes acted as an instrumentality of the BIA. (Doc. 18 at 13).

The Federal Government must supervise the day-to-day operations of an instrumentality in order for the FTCA to apply. *United States v. Orleans*, 425 U.S. 807, 815 (1976). Neither party has alleged facts that would bring the Tribes within this definition. Treasures allege that the BIA maintains a fire management program on Tribal Lands (Doc. 1 at 20), that Director Mangan and Doug Grandchamp responded to the fire and contacted BIA (Doc. 11 at 7), that BIA responded to the fire at the Ranch (Doc. 1 at 6), and that Magnan and Grandchamp remained at the scene of the fire until the late evening "to ensure that the fire was contained on the Ranch." (Doc. 11 at 7). None of these facts allege that the BIA and Tribal employees coordinated in managing the fire. These allegations fall well short of showing that the BIA supervised Tribal employees. Even if Grandchamp and Magnan had made themselves available to the BIA while managing the Fire, no evidence exists that the Tribe is involved in *day-to-day operations* supervised by

the BIA. The Tribes do not stand as an instrumentality of the BIA and the FTCA has not waived tribal sovereign immunity in this case.

The Tribes are entitled to tribal sovereign immunity, thus they are immune from suit under the FTCA and related claims. No evidence exists that the Tribes have waived this immunity. Treasures also have failed to make a compelling case for believing that further discovery would uncover an explicit waiver or abrogation of tribal sovereign immunity. The Court lacks jurisdiction over the Tribes in this instance, and, therefore, the claims against them are dismissed pursuant to Rule 12(b)(1). It is unnecessary to address whether Treasures alleged a claim upon which relief can be granted against the Tribes, because the Court lacks subject matter jurisdiction over any such claims.

## II. Whether tribal sovereign immunity deprives the Court of jurisdiction over Doug Grandchamp.

Treasures' claims against Doug Grandchamp turn upon two factors: (1) whether they have sued Grandchamp in his official or individual capacity; and (2) whether the remedy would operate against the Tribe. *See Maxwell v. Cnty.of San Diego*, 708 F.3d 1075, 1088 (9th Cir. 2013). The Tribes assert that Doug Grandchamp acted in his official capacity as an employee of the Tribes during the events alleged in the Complaint. As a result, the Tribes argue that any relief granted to Treasures would run against the Tribes. (Doc. 19 at 11).

Treasures counter that it remains unclear whether Grandchamp was acting in an official capacity during the events alleged in the Complaint. Treasures contend that even if Grandchamp was acting as a Tribal employee, they sue him in his individual capacity. Grandchamp would be individually responsible for any damages awarded to Treasures. (Doc. 18 at 9–11).

Tribal sovereign immunity protects tribal employees where a tribe's employees are sued in their official capacities. *See Maxwell*, 708 F.3d at 1086. Tribal sovereign immunity does not bar individual capacity suits against tribal employees when the plaintiff seeks damages from the individuals personally. *Id.* at 1087–90. This exception applies even if the plaintiff's claims involve actions that employees allegedly took in their official capacities and within their employment authority. *Id.*

*Maxwell* has articulated a "remedy-focused" analysis to determine whether tribal employees enjoy immunity from suit when sued in their individual capacity. Sovereign immunity shields a tribal employee when recovery against the individual, in reality, would run against the tribe. *Id.* Plaintiffs may not circumvent tribal sovereign immunity by identifying individual defendants when the tribe remains the "real, substantial party in interest." *Id.* The remedy sought and the scope of authority are coextensive when a party sues a tribal employee in his official capacity. *Id.* at 1088.

Treasures claim that they have sued Grandchamp in his individual capacity. None of the allegations in the Complaint identify Grandchamp individually. *See generally* (Doc. 1). Rather, all allegations pertaining to Grandchamp lump him in with the Tribes themselves as "Tribal Defendants." *Id.* It is difficult to find which of these claims *could* be targeted toward Grandchamp individually, given that he neither operated, nor owned, the swather that allegedly started the fire. (Doc. 11 at 7).

Doug Grandchamp's only role in the fire seems to arise from responding to the fire once it had already started. *Id.* Treasures did not seem aware that Grandchamp responded to the fire when they drafted the Complaint and they only mentioned it in their response brief to support their argument that the Tribes acted as an instrumentality of the BIA in fighting the fire. *See* (Doc. 18 at 13) ("Defendants claim that an alleged tribal member, Defendant Doug Grandchamp, assisted in putting out the fire. (Doc. 11, p.7). It is plausible here that the Tribes acted as an instrumentality of the BIA in failing to contain and properly respond to the fire"). This passing reference only further undermines Treasures' argument that they sue Grandchamp as an individual. Treasures cannot insist both that they are suing Grandchamp in his individual capacity, and argue that, by aiding the BIA's firefighting efforts, Grandchamp made it more likely that the Tribes were acting as an instrumentality of the BIA.

11

The Court assumes that an employee has been sued in their official capacity where plaintiffs articulate only generalized allegations that fail to differentiate the alleged conduct of the individual defendants from a tribe. *See Cain v. Salish Kootenai Coll., Inc.*, No. CV 12-181-GF-BMM, 2014 WL 12738908, at *7 (D. Mont. Dec. 3, 2014), *rev'd on other grounds*, *United States ex rel. Cain v. Salish Kootenai Coll., Inc.*, 862 F.3d 939 (9th Cir. 2017). The mere fact that Treasures generally address their prayer for relief to "Defendants, and each of them" rather than the Tribes, in particular, means little when Treasures have made no attempts to distinguish Grandchamp from the Tribes at any point in the Complaint. (Doc. 1 at 15). The prayer for relief serves as the only evidence Treasures present to establish that they seek damages from Grandchamp personally and that they sue him in his individual capacity. (Doc. 18 at 10–11). The Complaint itself establishes that the Tribes represent the "real, substantial party in interest." *Maxwell*, 708 F.3d at 1086.

The Court finds that Treasures sue Grandchamp in his official capacity as a tribal employee, as reflected by the allegations in the Complaint. The Complaint alleges that "Tribal Defendants," were negligent in "undertak[ing] any and all of their swathing and haying activities" without proper fire precautions and that "Tribal Defendants' swather caused the Buffalo Pasture fire." (Doc. 1 at 11) Nowhere do Treasures distinguish Grandchamp's actions from those of the Tribe.

Grandchamp is entitled to tribal sovereign immunity and Treasures' complaints against him should be dismissed under Rule 12(b)(1).

## ORDER

Accordingly, **IT IS ORDERED** that Defendants' Motion to Dismiss (Doc. 10) is **GRANTED.**

Dated this 15th day of October, 2021.

Brian Morris, Chief District Judge
United States District Court